**Robert L. STRAUSS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 22546.**

United States Court of Appeals
Fifth Circuit.

April 24, 1967.

Arthur B. Cunningham, Philip T. Weinstein, Cunningham & Weinstein, Miami, Fla., for appellant.

Aaron A. Foosaner, Edward A. Kaufman, Asst. U. S. Attys., Miami, Fla., Mitchell Rogovin, Asst. Atty. Gen., Richard B. Buhrman, Atty., Tax Division, Department of Justice, William A. Meadows, Jr., U. S. Atty., Aaron A. Foosaner, Asst. U. S. Atty., Miami, Fla., for appellee.

Before GEWIN and GOLDBERG, Circuit Judges, and SPEARS, District Judge.

GOLDBERG, Circuit Judge.

This is an appeal from a conviction for willful tax evasion. 26 U.S.C.A. § 7201. The defendant Robert L. Strauss was indicted for evading federal income taxes for the years 1956 and 1957. After an unplacid and acrimonious two and one-half week trial, Strauss was found innocent of the 1956 charges, but guilty of the 1957 transgressions. The government charged that Strauss had unreported income during 1957 amounting to $190,687.64. In this appeal Strauss complains of errors ranging from the egregious to the picayune. In reversing we discuss the egregious in the expectation that the picayune will not be repeated. We reverse and grant a new trial solely because the trial judge refused to instruct the jury on certain defenses claimed by Strauss.

Strauss's financial gyrations as detailed in the record are complicated, but in view of our disposition we need not follow every personal and corporate pirouette. If financial obfuscation could as a matter of law be equated with tax evasion, the finding of guilt here would be unassailable, but a jury on proper instructions must find more than darkness or shadows. We state the evidence most favorably to the government.

A. *The Harold Corporation debentures.* Strauss and Ray Goodman controlled the Harold Corporation although Strauss owned no stock in the corporation and was not an officer. Luella Helen Strauss, who was married to the defendant during the questioned years (but who at the time of trial was divorced from him), executed and delivered to the Harold Corporation on August 1, 1956, a non-interest-bearing note for $250,000, payable in ten years. In return for this note, Mrs. Strauss received Harold's debentures in the principal amount of $250,000. On March 4, 1957, these debentures were sold, it is unclear to whom, for $175,000. This sum was paid in three cashier's checks of $76,000, $50,000, and $49,000. Rather than deposit these checks immediately in Mrs. Strauss's account, the defendant and Mrs. Strauss undertook evasive action, using these checks to buy more cashier's checks for smaller sums. Most of these new checks were deposited in her account at various times during the next several months; some were used to buy even more cashier's checks in yet smaller sums, which were then deposited in Mrs. Strauss's account. The $49,000 check was deposited in the account of the Florida International Corporation, whose stock was owned by Mrs. Strauss. More checks were issued from this account. Sleight and deft mutation and distribution of checks led the money, nevertheless, to the Strauss account. Strauss himself ultimately received $42,000 of this sum in cash; most of the rest went to Mrs. Strauss's bank account.

The government offered testimony tending to show that Mrs. Strauss's affairs were at all relevant times under the complete control of her husband, that any property in her name was in reality his, and that any money paid to her was in fact paid to him. Luella Strauss was Robert Strauss's amanuensis. The government also offered testimony which the jury could believe to show that the note given by Mrs. Strauss to Harold was worthless when it was made, that the "sale" of the debentures to her for the note was sham, and that therefore her sale of the debentures yielded income to Strauss which he never reported.

Strauss defended by seeking to show that the note given by Mrs. Strauss had value equal to the worth of the debentures and that therefore the debentures had a basis equal to their sale price so that there was no gain on the sale. Strauss offered testimony to show that Mrs. Strauss owned $60,000 or $70,000 in jewelry and an undivided interest in the home in which she and her husband lived.

Further, the defendant claimed that the following transaction demonstrated that the note had value. The Harold Corporation owned the Cadillac Hotel in Miami Beach, Florida. Strauss and Good-

man were seeking, in 1957, a mortgage loan on the hotel for renovation. They approached Sam Kay, who succeeded in negotiating a $1,250,000 loan without subordination of the ground fee. Kay was promised a fee of 15 per cent of the principal. He was given as payment $50,000 cash, a Lincoln Continental automobile, and the Luella Strauss note, endorsed without recourse by Harold. If this defense were believed, it would show that the note was thought to have value by Sam Kay, who was a businessman.

B. *The Pan American Loan.* Mrs. Strauss owned all of the stock of the Florida International Corporation, but the jury could believe that Strauss dominated and controlled this corporation too. As of March, 1957, Harold owed Florida International $55,000, and Florida International owed the Pan American Bank $81,000. Harold, through Strauss's negotiations, procured a third mortgage of $330,000 from Pan American. When the funds had been credited to Harold's account on March 20, 1957, Strauss issued a check on that account for $111,000, payable to Florida International. This was $56,000 more than Harold owed Florida International. On March 26,

Florida International repaid Harold $14,750 by check, leaving $41,250 of the overpayment still in Florida International's hands. The government offered evidence to show that the corporate veil of Florida International should be pierced and the $41,250 counted as income to Strauss for 1957.

The defense to this claim is that $30,000 of the $41,250 was a fee paid to Florida International for obtaining the loan, and was not distributed by that corporation. The $11,250 remainder was paid to Mrs. Strauss, the defense claimed, to reimburse her for prepayment of a premium for an insurance policy on Strauss's life which Pan American had demanded before it would lend the money. The only evidence of such a policy was the defendant's testimony. No written policy was actually produced; nor was any business record relating to it produced.

■ At the conclusion of the evidence the defendant requested certain charges. The defendant claims error in the trial judge's refusal to charge the substance of defendant's requested charges numbered 20 and 21 and in his evisceration of the vitals of number 13.[1] We agree

---

1. "DEFENDANT'S REQUESTED INSTRUCTION NO. 20
If you find that the transaction involving the Promissory Note of Luella Helen Strauss, and the debentures received from the Harold Corp., was the transaction of Luella Helen Strauss, and not the defendant, you should not find that the defendant has realized any income from such transaction.
If, on the other hand, you find that the transaction was that of the defendant and not Luella Helen Strauss, the defendant is chargeable with income, only on the gain, if any, on the disposition of the debentures, and from that subtract the fair value of the Promissory Note, in the hands of the Harold Corp. If the result of such subtraction is zero or a minus figure, then the defendant may not be charged with income upon such transaction. If the difference is a plus figure, then the defendant may be charged with income to that extent, and only to that extent."

"DEFENDANT'S REQUESTED INSTRUCTION NO. 21
If, on the other hand, you find that the transaction was that of the defendant and not Luella Helen Strauss, the defendant is chargeable with income, only on the gain, if any, on the disposition of the debentures over their basis."
"DEFENDANT'S REQUESTED INSTRUCTION NO. 13
A corporation is a taxpayer and an entity, distinct from its stockholders and/or officers *Income of a corporation is not, as a matter of law, income of its officers and stockholders.*
'*The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the*

that the substance (though not necessarily the wording) of these charges should have been given. Defendant's dissatisfaction here is not pettifoggery over nuances of words. His objections go to the refusal to submit substantive defenses. Charges numbered 20 and 21 explain to the jury that if Mrs. Strauss's $250,000 note had value when it was given, then the debentures which she received for the note had a basis against which the price received for the debentures should be set off before such receipts could be counted as income. Charge number 13, as submitted by the defendant, explains that the corporation is a separate entity and that when used validly its income is not attributable to its shareholders and officers. No matter how astigmatic its vision might appear, the jury would have been entitled to see Mrs. Strauss's note as valuable and the funds in Florida International as its funds and not Strauss's. There was evidence in the record to support these conclusions, and the substance of the defendant's requested charges should have been given.

 "It is elementary law that the defendant in a criminal case is entitled to have presented instructions relating to a theory of defense for which there is *any foundation* in the evidence." Perez v. United States, 5 Cir. 1961, 297 F.2d 12, 13–14. [emphasis added]. We find no requirement that a requested charge encompass, in the trial judge's eyes, a believable or sensible defense. The judge is the law-giver. He decides whether the facts constituting the defense framed by the proposed charge, if believed by the jury, are legally sufficient to render the accused innocent. The jury is the fact-finder. If the trial judge evaluates or screens the evidence supporting a proposed defense, and upon such evaluation declines to charge on that defense, he dilutes the defendant's jury trial by removing the issue from the jury's con-

*carrying on of business by the corporation, the corporation remains a separate taxable entity.* * * * '
Moline Properties, Inc., v. Commissioner of Internal Revenue, 319 U.S. 436, 660

sideration. In effect, the trial judge directs a verdict on that issue against the defendant. This is impermissible. Bryan v. United States, 5 Cir. 1967, 373 F.2d 403. The judge must, therefore, be cautious and unparsimonious in presenting to the jury all of the possible defenses which the jury may choose to believe. We hold that where the defendant's proposed charge presents, when properly framed, a valid defense, and where there has been some evidence relevant to that defense adduced at trial, then the trial judge may not refuse to charge on that defense. In Tatum v. United States, 1950, 88 U.S.App.D.C. 386, 190 F.2d 612, 617, the D. C. Circuit said:

"We do not intend to characterize the case for the defense as either strong or weak. That is unnecessary, for 'in criminal cases the defendant is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility. He is entitled to have such instructions even though the sole testimony in support of the defense is his own.' "

Levine v. United States, 1958, 104 U.S. App.D.C. 281, 261 F.2d 747; Perez v. United States, supra; Smith v. United States, 6 Cir. 1956, 230 F.2d 935; United States v. Indian Trailer Corp., 7 Cir. 1955, 226 F.2d 595. See Merrill v. United States, 5 Cir. 1964, 338 F.2d 763; Koontz v. United States, 5 Cir. 1960, 277 F.2d 53.

The proper standard was not met here. The jury did not have to believe the defenses, but it should have been given the opportunity. This is true even if the defense is fragile. A defendant cannot be shortchanged nor his jury trial truncated by a failure to charge.

Reversed and remanded.

S.Ct. 438 [63 S.Ct. 1132, 87 L.Ed. 1499] (1943)."
[The italicized portion was stricken by the trial judge]