**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Stephen Irving TASHMAN and Andrew**
**Goldberg, Defendants-Appellants.**

**No. 72-2273.**

United States Court of Appeals,
Fifth Circuit.

May 18, 1973.

Daniel S. Pearson, Arthur B. Cunningham, Philip T. Weinstein and Bruce S. Rogow, Miami, Fla., for defendants-appellants.

Robert W. Rust, U. S. Atty., Barbara E. Vicevich, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and WISDOM and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Andrew Goldberg and Stephen Tashman, appellants, along with Ronald Osbrach, codefendant, were jointly indicted for violations of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2. Count I charged conspiracy to possess, with intent to distribute, quantities of marijuana. Count II charged possession of 140 pounds of marijuana with intent to distribute.

The case was called for trial on May 17, 1972. Prior to empanelling the jury, the district judge, on request of counsel for codefendant Osbrach, ordered that the courtroom be cleared except for Osbrach, his counsel and counsel for the Government. Counsel for Goldberg and Tashman requested that the district judge allow him to remain in the courtroom, but his request was denied.

The courtroom was then cleared as ordered and the following proceedings were conducted: Counsel for Osbrach announced that in agreement with the Government for a joint recommendation to the court, Osbrach would plead guilty to Count I of the indictment. The recommendation, which was subsequently honored by the court, was for a sentence to two years' probation under the Youth Corrections Act, 18 U.S.C. § 5005 et seq., contingent upon Osbrach's change of plea, his testimony against his codefendants Goldberg and Tashman, and the giving by him of "valuable" information to the Government. After having ascertained that Osbrach's plea of guilty was voluntary, the district judge at the request of counsel for Osbrach ordered the transcript of the proceedings sealed.[1] The case was then again called for trial and the district judge explained to the jury that they were to disregard the fact that Osbrach was named in the indictment as a defendant. The jury subsequently found appellants guilty on both counts. Goldberg was sentenced to four years on each count and Tashman to thirty months on each count, sentences of both defendants to run consecutively.

This appeal followed. We reverse and remand for a new trial because of the "secret" proceedings referred to from which appellants and their counsel were excluded, and which we hold resulted in substantial prejudice to the rights of appellants.

On March 26, 1972, Goldberg, Tashman and Osbrach were arrested by United States Customs Agents at an airport at Homestead, Florida. Goldberg had arrived at the airport in a Cadillac. Tashman and Osbrach were occupying a Dodge Charger. The federal agents observed the transfer of three large bundles from an aircraft parked on the airstrip to the trunk of the Cadillac. They then saw Osbrach leave the Dodge and approach the Cadillac. All three defendants were then arrested. The bundles, one of which was observed on the front seat of the Cadillac, contained marijuana.

Goldberg and Tashman both testified at the trial. Osbrach also testified but as a Government witness, according to the agreement reached during the secret proceedings. Goldberg's defense was based principally on the theory that his participation in the events at the airport was the result of his honest belief that he was assisting the Government as a special employee or undercover agent. He testified that within the three months preceding his arrest he had on various occasions in New York, Maryland, Virginia and Toronto, Canada, been used by the Government in its investigations of drugs and counterfeit checks. Not only was this testimony not disputed, it was substantially corroborated by the testimony of United States Customs Agents Murphy and Woods, called by the Government as rebuttal witnesses. Agent Murphy testified that he had spoken by telephone with Goldberg about four or five days prior to the arrest herein, that the subject of the conversation was the interception of marijuana at Miami, that

---

1. It was not until this Court on appeal ordered that the transcript be unsealed that appellants became fully aware of its contents.

Goldberg asked for the name of an agent in Miami to contact in the event that there was "something doing," and that as a result of that conversation Murphy telephoned Agent Scrip in Miami. Scrip testified that he called Goldberg on March 22 as a result of Murphy's call to Scrip's office concerning Goldberg. Agent Woods testified that Goldberg asked that he accompany him to Miami in connection with a marijuana transaction. Goldberg testified that records, tapes and photographs were made by the Government of his meetings with "contacts."

Goldberg also defended on the ground of entrapment. Tashman defended on the theory that he was assisting Goldberg, although reluctantly, in his efforts to cooperate with the Government. Osbrach's testimony in essence placed both appellants in the role of purported buyers of the imported marijuana with intent to distribute.

Appellants' counsel contend that prior to the trial defense counsel was not informed that an agreement had been reached between the Government and Osbrach during the secret proceedings and that consummation of the Government's part of the agreement was contingent upon the value of Osbrach's testimony against appellants. The Government contends that defendants were not entitled to the information and the nature of the closed proceedings and then inexplicably avers that appellants' counsel knew, in toto, what transpired at Osbrach's plea. The action of counsel for Osbrach and the Government, acquiesced in by the trial court, was so prejudicial to appellants as to require a new trial. Being unaware of what had occurred behind the closed doors of the courtroom, appellants had no effective way of combating the damaging testimony elicited by the Government from Osbrach. Faced with an apparent hostile witness, defense counsel elected to forego cross-examination of Osbrach. As the Supreme Court said in Napue v. People of the State of Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959), "The jury's estimate of the

truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." Under the circumstances, the jury had no way of knowing what interest Osbrach had in testifying.

We need not speculate on what effect knowledge of the secret contingent agreement would have had on the jury. The Supreme Court has made it clear that the failure of the Government to disclose to a jury plea-bargaining negotiations with a key witness deprives a defendant of constitutional due process. In Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Supreme Court reversed a conviction because of nondisclosure by the Government of its promise to a testifying accomplice that he would not be prosecuted in return for his cooperation. In remanding for a new trial, the Supreme Court said:

"Here the Government's case depended almost entirely on Taliento's testimony; without it there could have been no indictment and no evidence to carry the case to the jury. *Taliento's credibility as a witness was therefor an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it.*" (Emphasis added.)

405 U.S. at 153, 92 S.Ct. at 766.

The Supreme Court also said in Washington v. State of Texas, 388 U.S. 14, 22–23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967):

"Common sense would suggest that he [an alleged accomplice] often has a greater interest in lying in favor of the prosecution rather than against it, especially if he is still awaiting his own trial or sentencing. To think that criminals will lie to save their fellows but not to obtain favors from the prosecution for themselves is indeed to clothe the criminal class with

more nobility than one might expect to find in the public at large."

The Government's case here depended largely on the testimony of Osbrach, who testified to the participation of the two appellants in a plan to purchase marijuana and of being "cut in" on the deal by both of them. With the exception of Osbrach's testimony and certain hearsay evidence, discussed *infra*, which was erroneously admitted, the Government's evidence in chief consisted almost entirely of the activities at the airport shortly prior to and at the time of the arrest. Osbrach's credibility was, therefore, of critical importance.

Because of our decision to remand for a new trial it is unnecessary that we consider specifically other errors urged by appellants, except to set out the following directions for the guidance of the district court on retrial.

█ The Government should be required to produce, prior to trial, all of the documents, records, photographs or related tangible material evidence in existence which pertain to Goldberg's employment by the Government. Production of evidence favorable to an accused is required where the evidence is material either to his guilt or punishment, and this is so irrespective of the good or bad faith of the prosecution. Brady v. State of Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963). Goldberg, having defended primarily on the theory that he was acting in the capacity of an informer with intentions to turn over the marijuana to the Government, is entitled to the production of such evidence for whatever significance it may have in determining his innocence or guilt before a jury. Tashman, whose defense is encompassed within that of Goldberg's, is likewise entitled to the benefit of such evidence. For similar reasons Goldberg's request for jury instructions relative to his two theories of defense must be granted. The trial judge's instruction on entrapment did not also encompass the separate agent-of-the-Government theory. The trial court's failure to instruct on this theory also effectively denied Tashman the right to have the jury consider his theory of defense, i. e., his belief that he was assisting a Government agent. Where the evidence presents a theory of defense which has been called to the court's attention, refusal to charge on that defense is reversible error. Strauss v. United States, 5 Cir., 1967, 376 F.2d 416, 419. This is the established rule of this Circuit. In United States v. Megna, 5 Cir., 1971, 450 F.2d 511, we said:

> "Nearly fifty years ago the Circuit Court of Appeals for the Fifth Circuit laid down the rule that 'Where the evidence presents a theory of defense, and the court's attention is particularly directed to it, it is reversible error for the court to refuse to make any charge on such theory.' "

450 F.2d at 513.

As we said in *Strauss, supra,* "The jury did not have to believe the defenses, but it should have been given the opportunity." 376 F.2d at 419.

█ Finally, the trial judge should not permit a repetition of the hearsay testimony of Agent Wurster to the effect that he instructed Customs Agent Scrip to go to the Kendall Airport because of information from an undisclosed source regarding the arrival and description of the airplane carrying marijuana, and the description of the vehicles and occupants thereof who were to meet the airplane. It cannot be fairly said that the hearsay testimony was harmless. *Cf.* Favre v. Henderson, 5 Cir., 1972, 464 F.2d 359. To the contrary, it, along with the testimony of Osbrach, constituted the core of the Government's case. This does not mean that the Government is precluded on retrial from using Osbrach as a witness or from introducing proper testimony relative to the information to which Wurster testified. What it does mean is that the proper constitutional safeguards must be applied to the circumstances of this case.

Reversed and remanded for a new trial for both defendants.