**Patrick Garrison WILLIAMS,**
**Petitioner-Appellant,**

**v.**

**Bruce BROWN, Warden,**
**Respondent-Appellee.**

**No. 79–1264.**

United States Court of Appeals,
Fifth Circuit.

Jan. 7, 1980.

John C. Swearingen, Jr., Columbus, Ga., for petitioner-appellant.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before SIMPSON, CHARLES CLARK and FRANK M. JOHNSON, Jr., Circuit Judges.

CHARLES CLARK, Circuit Judge:

In this appeal from the denial of habeas corpus relief, we review the district court's determination that *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars review of petitioner's fourth amendment claim, that the state's failure to disclose the identity of an informant did not violate petitioner's fifth and fourteenth amendment rights, and that the state's failure to disclose bargains it had made for the testimony of two witnesses did not violate those same rights. We affirm the denial of habeas relief on the first two issues but conclude that third issue requires further factual development.

On July 12, 1976, Atlanta Municipal Court Judge Ed Brock issued a search warrant [Brock warrant] for petitioner Williams' business premises. An affidavit tendered by Detective Gordon Simpson [Simpson affidavit] based on information supplied by a confidential informant provided probable cause to issue the warrant. On July 13, 1976, Fulton County Superior Court Judge Luther Alverson issued a warrant for Williams' arrest, charging theft by receiving stolen property. Evidence seized pursuant

to the Brock warrant provided probable cause to issue the arrest warrant. Judge Alverson also issued a search warrant. A detective's affidavit based on observations made during the execution of the Brock warrant provided probable cause to issue the second search warrant. Justice of the Peace Robert Thompson issued a third search warrant on July 21, 1976.

Williams subsequently was arrested and charged with five counts of theft by receiving stolen property. Counsel for petitioner made a pre-trial motion for the production of exculpatory material.[1] Counsel also filed a pre-trial motion to suppress, attacking the validity of the search warrants. After two hearings, the trial court denied the motion to suppress. Evidence seized pursuant to the three warrants was introduced against Williams at trial. He was convicted and sentenced to ten years in prison. Williams contested the validity of the Brock warrant on direct appeal. The Georgia Court of Appeals rejected his arguments and affirmed his conviction. *Williams v. State,* 142 Ga.App. 764, 236 S.E.2d 893 (1977). The Georgia Supreme Court denied an application for a writ of certiorari.

While this action was on direct appeal, Williams' counsel learned that the confidential informant relied upon by Detective Simpson never previously had given information to the police leading either to an arrest in a burglary related crime or to the recovery of large amounts of stolen property. Counsel attempted to raise this issue on direct appeal by filing a supplemental enumeration of error the day the case was argued before the Georgia Court of Appeals. However, the court refused to pass on the pleading because the time for filing an amendment to the enumeration of error had expired. *Id.* at 769, 236 S.E.2d at 898.

Williams filed a petition for a writ of habeas corpus in the Superior Court of Fulton County, claiming in part that the Brock warrant failed to meet the first prong of the *Aguilar-Spinelli* test.[2] Counsel urged

1. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2. *See, Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v.*

the court to hear testimony on this issue because of the discovery of new evidence not available at the time of trial. The court denied petitioner's request and granted the State's preliminary motion to dismiss this portion of the petition, noting that the trial court "went into that very thoroughly during the course of the trial."[3] The court rejected the petitioner's other contentions and denied the petition for a writ of habeas corpus. An application for a certificate of probable cause to appeal to the Supreme Court of Georgia was denied.

On August 31, 1978, Williams filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Georgia, asserting that the search warrants were defective and violated the fourth amendment. Additionally, Williams contended that the prosecutor's failure to disclose both the identity of the confidential informant and the agreements and understandings existing with government witnesses Martin and Smith deprived him of his fifth and fourteenth amendment rights of due process. The district court afforded petitioner a hearing at which oral testimony was given by Justice of the Peace Robert Thompson, Assistant District Attorney Russell Parker, and petitioner's trial counsel, Guy Davis. Additionally, the district court had before it the deposition of Detective Simpson[4] and the transcripts of the December 20, 1976, and February 7, 1977, motion to suppress hearings and the April 7, 1978, state habeas corpus proceeding. The district court denied petitioner relief on his fourth amendment challenge, finding that "the Petitioner has clearly had the 'opportunity to litigate' as contemplated in *Stone v. Powell*." The district court rejected Williams' fifth amendment challenges, noting that "the Superior Court of Fulton County conducted a full and fair hearing on the merits of these contentions and made findings of fact fully supported by the evidence." Accordingly, the district

court dismissed the petition for a writ of habeas corpus. Williams appeals.

### I. The Bar of *Stone v. Powell*

Williams contends the failure of the state court to consider the newly discovered evidence relating to the Simpson affidavit at the state habeas corpus proceeding denied him the opportunity for full and fair litigation of his fourth amendment claim. He therefore argues the district court erred in dismissing his fourth amendment claim as barred by *Stone v. Powell*.

Williams raised various fourth amendment challenges to the search warrants both at the motion to suppress hearing and on direct appeal. He renewed many of these claims in his petition for state habeas corpus relief. These opportunities for full and fair litigation of fourth amendment challenges clearly suffice to bar a federal court from reexamining those claims in a federal habeas corpus proceeding. *See Brown v. Wainwright*, 576 F.2d 1148, 1149 (5th Cir. 1978). *See generally, O'Berry v. Wainwright*, 546 F.2d 1204, 1209–14 (5th Cir.), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2981, 53 L.Ed.2d 1096 (1977).

However, at the state habeas corpus proceeding Williams sought to attack the truthfulness of material statements contained in the Simpson affidavit. This particular fourth amendment challenge, together with the evidence petitioner sought to rely on, had not been presented previously. The state habeas corpus court refused to consider the newly discovered evidence and dismissed those portions of the petition relating to possible fourth amendment violations, erroneously concluding that the court "went into that very thoroughly during the trial."

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that a criminal defendant, upon a proper preliminary showing, must be afforded a hearing at which the

---

*Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

**3.** The Fulton County Superior Court Judge who heard Williams' pre-trial motion to suppress

and presided at Williams' trial, also presided at the habeas corpus proceeding.

**4.** This deposition was taken during the discovery phase of the state habeas corpus action.

truthfulness of factual statements made in an affidavit supporting a search warrant can be challenged. The Court stated:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155–156, 98 S.Ct. at 2676–77, 57 L.Ed.2d at 672. The court then set out the preliminary showing that must be made before an evidentiary hearing is required.

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless

disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and, if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth Amendment, to his hearing.

*Id.* at 171, 98 S.Ct. at 2685, 57 L.Ed.2d at 682 (footnote omitted).

At the state habeas corpus proceeding, Williams made the requisite preliminary showing that, if made at a pre-trial motion to suppress stage, would have entitled him to a hearing under *Franks.*[5] The Supreme Court characterized its opinion in *Franks* as being of "limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on the allegations of misstatements must be accorded." *Id.* at 167, 98 S.Ct. at 2683, 57 L.Ed.2d at 679. For purposes of the present appeal, we assume without deciding that, upon both a demonstration of newly discovered evidence[6] and the requisite preliminary showing required by *Franks,* Williams was entitled to a hearing at the state habeas corpus proceeding on his allegation regarding the truthfulness of statements contained in the Simpson affidavit.[7] Williams was denied

---

**5.** Paragraph eleven of Williams' petition alleges that the police fabricated a specified portion of the affidavit in an attempt to mislead the magistrate into believing there was sufficient probable cause to issue the warrant. It additionally alleges possession of information showing the specified portion of the affidavit to be false. This offer of proof was continued at the hearing when counsel noted his ability and willingness to introduce testimony from both the informant and the affiant. Moreover, the challenged portion of the affidavit clearly is material because, without a demonstration of the informant's past reliability, the first prong of the *Aguilar-Spinelli* test remained unsatisfied and the search warrant properly could not have been issued.

**6.** The State of Georgia argues that the evidence does not meet the test of newly discovered

evidence. *See generally, United States v. Antone,* 603 F.2d 566, 568–69 (5th Cir. 1979); *United States v. Rachal,* 473 F.2d 1338, 1343 (5th Cir.), *cert. denied,* 412 U.S. 927, 93 S.Ct. 2750, 37 L.Ed.2d 154 (1973). The record fails to disclose whether the defendant or his counsel, having actual knowledge of the informant's identity, *see infra* at 221, could have discovered this evidence through the exercise of ordinary diligence. For purposes of this appeal, we further assume the evidence was newly discovered.

**7.** The Supreme Court decided *Franks* after the dismissal of Williams' state habeas corpus petition and prior to the filing of his federal habeas corpus petition. We also assume *arguendo* its applicability for purposes of this appeal.

this hearing because of a mistaken belief that the allegation had been considered during Williams' trial. The issue before this court is whether the failure of the state habeas corpus court to afford petitioner a hearing on his *Franks* allegation denied him the opportunity for full and fair litigation of his fourth amendment claim. We conclude it did not and find that the district court correctly dismissed this portion of Williams' petition as barred by *Stone v. Powell.*

Initially, we observe that the hearing mandated by *Franks* is based on considerations arising from the warrant clause of the fourth amendment. *Id.* at 164–167, 98 S.Ct. at 2681–82, 57 L.Ed.2d at 680. The Supreme Court recognized that these considerations necessarily were interrelated with the judicially created remedy for fourth amendment violations: the exclusion of seized evidence as a deterrent to wrongful conduct where the benefit achieved from exclusion promises to outweigh the costs to society of its use. *Id.* at 165–171, 98 S.Ct. at 2682–84, 57 L.Ed.2d at 672–682. The conduct sought to be deterred in *Franks* is the knowing, intentional, or reckless use by law enforcement personnel of false statements in affidavits tendered in support of search warrants.

In *Caver v. Alabama,* 577 F.2d 1188 (5th Cir. 1978), this court observed that it is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone v. Powell. Id.* at 1192–93. In *Caver,* we held that, "if state procedures afford the defendant in a criminal case the opportunity to [fully and fairly] litigate whether evidence obtained in violation of the fourth amendment should be excluded . . . then *Stone v. Powell* precludes federal habeas corpus consideration of those issues whether or not the defendant avails himself of that opportunity." *Id.* at 1193.

Moreover, subsequent to *Caver* this court held that the bar of *Stone v. Powell* still applies despite a state court error in deciding the merits of a defendant's fourth amendment claim. *Swicegood v. Alabama,* 577 F.2d 1322, 1324–25 (5th Cir. 1978). Here, however, the state court mistake occurred not when deciding the merits of the fourth amendment claim, but in ruling on whether the claim had already been presented. This error prevented the state habeas corpus court from considering the merits of Williams' fourth amendment claim. Nevertheless, in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits, the rationale of *Caver* dictates that *Swicegood's* application of *Stone* despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims. Accordingly, we find that the district court correctly dismissed petitioner's fourth amendment claims as being barred by *Stone v. Powell.*

## II. Disclosure of the Informant's Identity

Williams next argues that the prosecutor's failure to disclose the identity of the confidential informant prevented him from effectively inquiring into the informant's past reliability and thus deprived him of the due process of law. He argues that the protection normally afforded the identity of informants is inapplicable where the informant's name appeared on the government's witness list and where the informant actually testified at trial. We reject this argument. This court often has recognized that the identity of the informant as an informant properly is protected through nondisclosure. *See, e. g., United States v. Drew,* 436 F.2d 529, 534 (5th Cir. 1970), *cert. denied,* 402 U.S. 977, 91 S.Ct. 1682, 29 L.Ed.2d 143 (1971); *Gonzales v. Beto,* 425 F.2d 963, 971 (5th Cir.), *cert. denied,* 400 U.S. 928, 91 S.Ct. 194, 27 L.Ed.2d 189, *and* 400 U.S. 1001, 91 S.Ct. 476, 27 L.Ed.2d 452 (1970).

■ On the merits, Williams cannot prevail on his informer identity claim. The record shows that defense counsel had actual knowledge of the identity of the confidential informant as early as the February 7, 1977, suppression hearing.

> MR. DAVIS: What did you tell Judge Brock as far as what, how the defendant got his information?
> DETECTIVE SIMPSON: I had rather not get into that because that would reveal the identity of my informant.
> MR. DAVIS: If Your Honor please, the informant is obviously a man named Smith who was one of the burglars. It is already well known. It has been hashed out and discussed. The officer knows it is known . . . . .

Clearly any error that might have resulted from the nondisclosure of the informant's identity was harmless beyond any reasonable doubt in light of defense counsel's actual knowledge. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Williams in no way was prejudiced by the nondisclosure. Any challenge to Smith's past reliability as an informant could have been explored effectively either by calling Smith as a witness at the suppression hearing or by cross-examining him at trial. Accordingly, the district court properly dismissed this contention.[8]

### III. Disclosure of Pre-Existing Agreements

■ Williams argues that the failure of the state to disclose promises, agreements, and understandings with witnesses Martin and Smith denied him due process of law. The State of Georgia responds that no promises, agreements, or understandings existed with these witnesses at the time of trial.

Williams alleges that Martin benefited from promises of possible immunity or probation made by various members of both the police department and the district attorney's office. He notes that, although Martin confessed to forty-eight burglaries, the police charged him only with fourteen and the court sentenced him, on recommendation of the district attorney, to ten years imprisonment with one year to serve. Williams further alleges that, as a result of an agreement with various members of the police department that later was adopted by the district attorney's office, Smith's twenty-year sentence for a prior burglary conviction subsequently was reduced to a nine-year sentence to run concurrently with a federal bank robbery conviction.

■ The law is clear that the failure of the government to disclose both to the defense and to the trial jury the existence of any promises, agreements, and understandings made with key witnesses deprives a defendant of due process of law. *Giglio v. United States,* 405 U.S. 150, 153–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 108–109 (1972); *United States v. Crockett,* 534 F.2d 589, 601–03 (5th Cir. 1976); *United States v. Fontenot,* 483 F.2d 315, 325–26 (5th Cir.

---

8. Williams does not contend that the nondisclosure of the informant's identity resulted in his inability to obtain the informant's substantive testimony at trial. Rather, he contends that the nondisclosure prevented him from effectively inquiring into the informant's past reliability and thus prevented him from challenging the veracity of statements contained in the Simpson affidavit as allowed under *Franks.* Prior to *Franks,* this Court, in reliance on *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), announced the general rule that the Government need not disclose the identity of an informant where the sole purpose to be served is an attack on the probable cause supporting a search warrant. *United States v. Mendoza,* 433 F.2d 891, 893–94 (5th Cir. 1970), *cert. denied,* 401 U.S. 943, 91 S.Ct. 953, 28

L.Ed.2d 225 (1971). The Supreme Court's decision in *McCrary v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), decided prior to but not discussed in this Court's decision in *Mendoza,* supports this position. *See also Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). The Supreme Court in *Franks* expressly pretermitted whether the revelation of the identity of an informant is required once a substantial preliminary showing of falsity is made. 438 U.S. at 169, 98 S.Ct. at 2684, 57 L.Ed.2d at 680.

Our harmless error determination makes it unnecessary to decide whether our line of authority supporting nondisclosure of an informant's identity where the sole purpose of disclosure is to attack the probable cause to arrest or search survived *Franks.*

1973); *United States v. Cawley,* 481 F.2d 702, 706–09 (5th Cir. 1973); *United States v. Tashman,* 478 F.2d 129, 131 (5th Cir. 1973).

The district court dismissed Williams' claim, noting that:

> [T]he state court went into this contention fully and concluded that there was no basis for the petitioner's complaint.
>
> . . . [The] Superior Court of Fulton County conducted a full and fair hearing on the merits of these contentions and made findings of fact fully supported by the evidence. This being true, it would not be proper for this court to go further into the matter.

The dismissal was erroneous.

The state habeas corpus court made no findings regarding Smith, even though Williams alleged that promises had been made to him. A factual dispute exists that must be resolved. Smith's testimony at the state habeas hearing acknowledges an ongoing relationship with the local police that predated by two to three months the burglary underlying Williams' present confinement. Moreover, Smith attributed the reduction in his twenty-year sentence to his assistance in the *Williams'* case. Smith's attribution is supported in the transcript of his plea and sentencing hearing furnished by the State of Georgia pursuant to this court's request at oral argument. At that hearing, the district attorney first acknowledged that certain recommendations to be made to the court resulted from negotiations with defense counsel. He next advised the court of Smith's assistance and testimony in the *Williams* case. After the court sentenced Smith to a term of nine years imprisonment to run concurrently with an existing federal sentence, the district attorney did not oppose a defense motion for a new trial in a case in which Smith previously had received a twenty-year sentence, despite the fact that the State's case was said to be "solid as a rock." On remand, the district court must resolve the existing factual dispute regarding promises, understandings, or agreements made with witness Smith.

Williams also asserts that undisclosed promises or understandings existed with witness Martin. The state habeas corpus court found "that at the time of trial, witness Charles Martin had not been promised any benefit or lenient sentence other than as stated in the trial record." At the state habeas corpus hearing, Martin testified that he was surprised that his sentence contained any jail time because of promises of possible immunity made to him by Sergeant Ramsey, Detective Simpson, and District Attorney Drolet. Martin previously had asserted the existence of such promises in an affidavit dated November 15, 1977. Sergeant Ramsey testified that, although he never personally promised Martin he would recommend immunity, he was present when Drolet made a promise of probation and at least once he had conveyed that promise to Martin. District Attorney Parker testified, both at the state habeas corpus hearing and at the district court hearing, that a meeting was held prior to Martin's testimony in the *Williams* case at which he personally called off any promises or deals previously existing with Martin. Parker's testimony regarding this meeting is corroborated by Sergeant Ramsey. At the state habeas corpus hearing, Martin recalled the meeting and testified that after the meeting he believed that a deal still existed. Parker acknowledged at the state hearing that Martin had been charged with only fourteen of the forty-eight burglaries he had confessed to and further testified that the state had delayed the disposition of Martin's case pending Williams' direct appeal in part because the state felt they might need Martin's testimony should a retrial be required.

The evidence before the district court, although conflicting, could support a finding that whatever deals or promises existed with Martin were retracted by Parker prior to Martin's testimony in the *Williams* case. This, however, does not explain how a criminal who had confessed to some forty-eight burglaries was charged with only fourteen and ultimately was sentenced to ten years imprisonment with only one year to serve. The record in Martin's plea and sentencing proceedings furnished by the State of Geor-

gia pursuant to our request at oral argument provides a partial explanation.

At those proceedings, the district attorney clearly advised the sentencing court of Martin's assistance and testimony in the *Williams* case and appears to have in fact honored some preexisting promise to Martin in terms of a recommended sentence. The record raises anew the factual issue of whether an undisclosed promise, understanding, or agreement existed between the State of Georgia and witness Martin. This issue must be determined by the district court on remand. We intimate no view as to its proper outcome.

The judgment of the district court dismissing the petition for a writ of habeas corpus is affirmed except as to that part thereof which found that the disclosure of preexisting agreements with government witnesses was properly supported by state records and determinations. This latter portion thereof is vacated and the case is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.