Lue Elbert SULLIVAN,
Petitioner-Appellant,

v.

Frank BLACKBURN, Warden Louisiana State Penitentiary, and William J. Guste, Jr., Attorney General, State of Louisiana, Respondents-Appellees.

No. 86–3175
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 28, 1986.

Rehearing Denied Dec. 24, 1986.

Lue Elbert Sullivan, pro se.

Elizabeth M. Gaudin, Asst. Dist. Atty., Research & Appeals, Dorothy A. Pendergast, Gretna, La., for respondents-appellees.

Before CLARK, Chief Judge, GARWOOD, and HILL, Circuit Judges.

CLARK, Chief Judge:

Lue Elbert Sullivan appeals the district court's denial of his petition for a writ of habeas corpus. We affirm the district court's judgment.

I.

In 1973, a Louisiana jury convicted Sullivan of second degree murder. He was sentenced to life imprisonment. The Louisiana Supreme Court affirmed his conviction without opinion. In 1979 Sullivan's first federal petition for a writ of habeas corpus was denied by the United States district court for the Eastern District of Louisiana and the Fifth Circuit affirmed the denial without opinion. In 1984 Sullivan filed petitions in Louisiana state court raising the issues presented in the current federal petition. The writs were denied by the state trial court and subsequently by the state supreme court as well.[1]

In 1972, when Sullivan was sixteen, he moved from Alabama to Louisiana with his common law wife, thirteen year old Juanita Sullivan. A year later, Sullivan and Juanita had an argument and he ordered her to leave their apartment. She left and spent the next two days living with the victim, Danny Durbin. On the second day, Juanita left a note for Sullivan that she no longer cared for him and did not wish to see him any more. Sullivan went to Durbin's trailer and argued through the window with Juanita and Durbin.

Sullivan then went home, got a shotgun and returned to the trailer. He called Durbin and when Durbin appeared at the window Sullivan shot and killed him. He then shot at Juanita but only grazed her.

According to police, Sullivan began to run away but realized he would be caught and turned himself in. He initially gave police an oral inculpatory statement but refused to give a written statement, saying he wanted to wait until he spoke with an attorney.

Sullivan pleaded not guilty by reason of insanity. Prior to trial he was examined by a court-appointed lunacy commission to determine if he was legally sane at the time of the crime and if he could assist his counsel in his defense. The trial court found Sullivan was legally sane at the time of the crime and was able to assist in his defense.

At trial Sullivan placed in evidence an electroencephalogram taken when he was nine years old that showed an unexplained abnormality. He also submitted X-rays taken due to a head injury that occurred two weeks before the crime, and medical reports of other childhood illnesses. He did not have medical experts explain the evidence.

His mother testified he would "have a weak spell and fall out" when he was upset. Sullivan testified he was subject to infrequent blackouts. He said he could not remember shooting Durbin. Juanita testified she had never seen him black out.

There is no indication in the record or the briefs that defense counsel requested a jury instruction on insanity or objected to the instructions given. The trial judge did not give an insanity instruction on his own initiative.

Sullivan presents two issues in his current federal petition for a writ of habeas corpus:

1) The trial court failed to give a jury instruction on insanity; and

2) The Louisiana statute on the penalty for second degree murder is void for vagueness.

II.

Sullivan asserts that the failure to instruct the jury on his insanity defense was prejudicial to him because: 1) it lessened the state's burden of proof; 2) it put the

---

1. As the magistrate's report points out, it is unclear whether Sullivan exhausted his state remedies but the state has waived the right to raise such a claim, *McGee v. Estelle*, 722 F.2d 1206 (5th Cir.1984) (en banc), and does not raise it in this court.

defendant in the position of admitting guilt without excuse; 3) it removed the responsibility of determining sanity from the jury; 4) it effectively changed the defendant's plea to not guilty; and 5) it eliminated the defense of insanity. Sullivan points out that Louisiana law requires the court to instruct the jury regarding a plea of not guilty by reason of insanity. La.Code Crim.Proc. Arts. 803, 805, 816.

■ Our inquiry is not whether there was prejudice to the defendant, or whether state law was violated, but whether there was prejudice of constitutional magnitude. If this were a direct appeal from a federal trial the plain error standard of review would apply to this case because the defense counsel failed to offer an instruction on insanity or object to the instructions given by the court. *United States v. Abravaya,* 616 F.2d 250, 251 (5th Cir.1980). In a collateral attack on the constitutionality of a state court judgment, the petitioner has a greater burden than the showing required to establish plain error on direct appeal. *Henderson v. Kibbe,* 431 U.S. 145, 156, 97 S.Ct. 1730, 1736–7, 52 L.Ed.2d 203 (1977). In *Henderson* the Supreme Court considered the trial court's failure to give a jury instruction and stated:

> The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten,* 414 U.S. [141], at 147, 94 S.Ct. [396], at 400, 38 L.Ed.2d 368 [ (1973) ], not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" *id.,* at 146, 94 S.Ct. at 400.
>
> In this case, the respondent's burden is especially heavy because no erroneous instruction was given.... An omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law.

431 U.S. at 155, 97 S.Ct. at 1737. *See also Plunkett v. Estelle,* 709 F.2d 1004, 1009 (5th Cir.1983), *cert. denied sub. nom. McKaskle v. Plunkett,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233; *Baldwin v.*

*Blackburn,* 653 F.2d 942 (5th Cir.1981), *cert. denied,* 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475.

■ This court has stated in direct appeal cases that a defendant is entitled to have the jury instructed on requested defense theories that have a foundation in the evidence. *United States v. Lewis,* 592 F.2d 1282, 1285 (5th Cir.1979); *Strauss v. United States,* 376 F.2d 416, 419 (5th Cir.1967). Even in the context of a direct appeal it is not reversible error if the trial court fails to give an instruction that does not have a legally sufficient basis in the evidence. As we stated in *Strauss:*

> The judge is the law-giver. He decides whether the facts constituting the defense framed by the proposed charge, if believed by the jury, are legally sufficient to render the accused innocent.

376 F.2d at 419. *See also United States v. Lewis,* 592 F.2d 1282, 1285 (5th Cir.1979).

■ The trial court is not required to instruct the jury on a defense theory if the evidence is insufficient as a matter of law for the defendant to prevail on that theory. *United States v. Beaver,* 524 F.2d 963, 966 (5th Cir.1975), *cert. denied,* 425 U.S. 905, 96 S.Ct. 1498, 47 L.Ed.2d 756. In *Beaver,* the defendant presented an alibi defense but did not request an alibi instruction and the trial court did not give one. This court held the lack of an alibi instruction was not reversible error because the evidence related to the defendant's whereabouts before the crime, not at the time the crime occurred.

■ Similarly, in this case there is no evidence that Sullivan could not distinguish right from wrong during his blackout spells. Sullivan testified he was subject to occasional blackouts and could not remember shooting Durbin. Louisiana law requires the defendant to establish by a preponderance of the evidence that he was incapable of distinguishing right from wrong at the time of the crime. *State v. Roy,* 395 So.2d 664, 665–66 (La.1981). When viewed in the light most favorable to Sullivan, the evidence is legally insufficient to

meet his burden. The fact he could not remember shooting Durbin does not indicate he could not distinguish right from wrong at the time of the shooting. The failure to instruct the jury on the insanity defense did not violate due process.

### III.

Sullivan contends the sentencing portion of the Louisiana statute on second degree murder is unconstitutionally vague. Because that portion of the statute was read to the jury, he contends the vagueness was prejudicial to him. At the time of Sullivan's trial, the relevant section of the statute stated:

> Whoever commits the crime of second degree murder shall be imprisoned at hard labor for life and shall not be eligible for parole, probation or suspension of sentence for a period of twenty years.

La.Rev.Stat.Ann. § 14:30.1. The court read this portion of the statute to the jury when the jury requested instructions on the penalty provisions for first and second degree murder and manslaughter. Sullivan asserts the court should also have read to the jury part of La.Rev.Stat. § 15:574.4(B):

> No person serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years.

Sullivan contends the jury might have convicted him of manslaughter rather than second degree murder if they had known he would *never* be eligible for parole unless his sentence was commuted to a fixed term of years.

■■■ The Supreme Court stated in *United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979) that "vague sentencing provisions may pos[e] constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." The Louisiana statute at issue in this case passes the test of constitutionality. It clearly states that persons convicted of second degree murder may not be paroled for twenty years. The statute does not say that persons will be paroled *after*

twenty years. A "person of ordinary intelligence," *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954), in our society knows that the giving of parole is typically a discretionary matter in which a variety of factors must be balanced. The jury must have known that Sullivan might never be paroled. The jury's understanding of the penalty was constitutionally sufficient.

### Conclusion

For the foregoing reasons, we affirm the district court's judgment denying Sullivan's petition for a writ of habeas corpus.

AFFIRMED.