United States Court of Appeals
Fifth Circuit

**F I L E D**

January 27, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

————————

No. 04-70011

————————

LUIS RAMIREZ,

Petitioner-Appellant,

versus

DOUG DRETKE, Director
Texas Department of Criminal Justice,
Correctional Institutions Division

Respondent-Appellee.

————————————————————————————————

Appeal from the United States District Court
For the Northern District of Texas

————————————————————————————————

Before BARKSDALE, GARZA, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Petitioner Luis Ramirez was convicted of capital murder and sentenced to death for the

murder of his ex-wife's boyfriend, Nemecio Nandin. The Texas Court of Criminal Appeals affirmed

the conviction and sentence on direct appeal and denied Ramirez's subsequent petition for a writ of

habeas corpus. A federal district court denied Ramirez's ensuing petition for a writ of habeas corpus

and refused to issue a Certificate of Appealability ("COA"). Ramirez now requests a COA from this

Court, claiming that (1) his conviction for capital murder is based upon legally insufficient evidence; (2) he was denied his right to confront a witness when the court admitted out-of-court statements by an accomplice implicating Ramirez in the murder; (3) he was denied his right to trial by jury because the district court allowed the jury to consider improper evidence during sentencing; (4) he received ineffective assistance of counsel because his trial counsel failed to locate, interview and subpoena an alibi witness; and (5) he received ineffective assistance of counsel because his trial counsel failed to object to the district court's punishment charge.

I

Nemicio Nandin was a fireman and part-time washer/dryer repairman who was dating Ramirez's ex-wife, Dawn Holquin. The record suggests that Ramirez had been jealous of Holquin's boyfriends, and Ramirez's daughter testified that Ramirez was visibly upset about his ex-wife's relationship with Nandin. Days before Nandin's murder, Ramirez was seen meeting with an associate, Edward Bell, at a house owned by Lana Riordan (the "Riordan House") where Bell and his girlfriend had previously lived. At around the same time, Bell told Timothy Hoogstra, at whose home he was then staying, that Ramirez had hired him to kill a fireman for $1,000.

Nandin was killed at the Riordan House on April 8, 1998, shot twice in the head with a shotgun and buried on the property. His truck was later discovered at a local Wal-Mart. Bell's girlfriend, Lisa McDowell, testified that she left Bell alone, without a car, at the Riordan House between 11 A.M. and noon on the day of the murder, and that Ramirez dropped Bell off at McDowell's aunt's house between 3:30 and 4 P.M. that afternoon. As McDowell drove Bell back from her aunt's house back to the Riordan House later that afternoon, she saw Bell throw two latex gloves out of the car window. Police later recovered the gloves and a set of keys fitting Nandin's

truck. A subsequent search of McDowell's car revealed Bell's wallet, containing two of Ramirez's business cards and handwritten notes including directions to Holquin's house, her address, her uncle's address, and descriptions of Holquin's and her uncle's cars. Police also discovered in the car a pair of jeans and a glove spattered with Nandin's blood. Shortly after the murder, but before his arrest, Bell described the murder to Hoogstra. Bell told Hoogstra that he and Ramirez had gone to the Riordan House, called Nandin for a washer repair, handcuffed Nandin when he arrived and shot him with a shotgun, burying him on the property. Testimony indicated that Ramirez had purchased the same brand of handcuffs years earlier.

The state also introduced evidence suggesting a plausible timeline)) a period of time in which Ramirez could have been with Bell at the Riordan House committing the murder. Ramirez's girlfriend, Ginger Herring, testified that on the day of the murder Ramirez had packed a bag and left his home between 12:30 and 1:00 P.M. and returned around 3:00 or 3:30 P.M. Finally, the state introduced evidence that Ramirez and Bell were seen together after the murder and that on at least one occasion Bell, who had no apparent means of support, returned from such a meeting with cash.

II

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), Ramirez must obtain a COA in order to appeal the district court's denial of his habeas petition. *See* 28 U.S.C. § 2253(c)(1). To obtain a COA, Ramirez must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, Ramirez "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that

petitioner will not prevail." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). "The question is the debatability of the underlying claim, not the resolution of that debate." *Id*. at 342. While the nature of a capital case is not of itself sufficient to warrant the issuance of a COA, in a death penalty case "any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor.'" *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000) (citing *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000)).

In determining whether a COA should be granted under this standard, this Court must remain cognizant of the deferential standard of review imposed by AEDPA upon the district court in considering habeas petitions. *See Miller-El*, 537 U.S. at 336-37 ("We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable among jurists of reason."). Under AEDPA, the district court may grant habeas relief only if it determines that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (2). Further, the state court's findings of fact are entitled to a presumption of correctness and the petitioner may overcome that presumption only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

III

Ramirez contends that jurists of reason would find debatable the district court's conclusion that there was sufficient evidence to find Ramirez guilty and that a rational juror could have found

Ramirez guilty of capital murder.[1] Under section 2254, habeas relief "on a claim of insufficient evidence is appropriate only 'if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *West v. Johnson*, 92 F.3d 1385, 1393 (5th Cir. 1996) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)). All credibility choices and conflicting inferences are to be resolved in favor of the verdict. *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999). "A determination of a factual issue made by a State court shall be presumed correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254 (e)(1).

Our review of the evidentiary record, summarized in Part I, *supra*, shows reasonable jurists could not disagree with the district court's determination that the state court was not unreasonable in holding that the evidence presented at trial was sufficient to permit a rational jury to find Ramirez guilty of capital murder.[2]

_____

[1] We interpret the district court's finding that there was sufficient evidence to find Ramirez guilty as holding that the state court's conclusion that the evidence was legally and factually sufficient to sustain Ramirez's conviction was not an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

[2] Ramirez also suggests that the district court erroneously relied on a "procedural bar" in rejecting his insufficient evidence argument. This is incorrect. The district court examined the transcript of the state trial and determined that "there was sufficient evidence to find Ramirez guilty and that a rational juror could have found Ramirez guilty of capital murder." There is nothing in the district court's order denying Ramirez's habeas petition to suggest that the court found or relied upon a procedural bar in rejecting Ramirez's insufficient evidence argument.

Ramirez further suggests that under Texas law the state trial court was required to determine whether Ramirez's participation in the murder was inferrable from other evidence before admitting Bell's out -of-court statements implicating Ramirez. *See* Tex. Code Crim. Proc. Art 38.14. But to obtain a COA, Ramirez must make a "substantial showing of the denial *of a constitutional right*." 28 U.S.C. § 2253(c)(2) (emphasis added). Even assuming that Ramirez is correct with respect to Texas criminal procedure, he has made no argument that the state statutory requirement is derived from federal constitutional principles. *See Cathey v. State*, 992 S.W.2d 460, 462-63 (Tex. Crim. App. 1999) ("The accomplice witness rule is a statutorily imposed sufficiency review and is not

IV

Ramirez next argues that admission of Bell's out-of-court statements implicating Ramirez in the murder)) specifically, Bell's statement to Hoogstra before the murder that Ramirez had hired him to kill a fireman and his subsequent description of the murder to Hoogstra)) violated his Sixth Amendment right to confront witnesses against him. The admission of hearsay evidence against a defendant implicates the Sixth Amendment's Confrontation Clause because the defendant is not afforded an opportunity to confront the out-of-court declarant. *Ohio v. Roberts*, 448 U.S. 56, 63 (1980). However, a hearsay statement against a defendant may be introduced if the statement bears sufficient "indicia of reliability." *Id*. at 66. Indicia of reliability can be shown either by demonstrating that the statement falls within a "firmly rooted" hearsay exception or that it is supported by "particularized guarantees of trustworthiness." *Idaho v. Wright*, 497 U.S. 805, 815-17 (1990).[3]

Ramirez argues that Bell's non-custodial statements do not fall within a firmly rooted exception and that Bell's statements implicating Ramirez must therefore be supported by particularized guarantees of trustworthiness. The State does not dispute Ramirez's conclusion that Bell's statements do not fall within a firmly-rooted exception. Instead it argues that the statements

---

derived from federal or state constitutional principles that define the legal and factual sufficiency standards.").

[3] In *Crawford v. Washington*, the Supreme Court held that "testimonial evidence" is not admissible absent a showing that the declarant is unavailable to testify and that there was an opportunity for cross-examination, irrespective of indicia of reliability. 124 S.Ct. 1354, 1374 (2004). While declining to provide a comprehensive explanation of what constitutes testimonial evidence, the Court explained that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police investigations." *Id*. The full reach of *Crawford*'s holding remains unclear, but both Ramirez and the State maintain that Bell's out-of-court statements are not "testimonial evidence" as that term is used in *Crawford*. We agree. There is nothing in *Crawford* to suggest that "testimonial evidence" includes spontaneous out-of-court statements made outside any arguably judicial or investigatory context.

are supported by particularized guarantees of trustworthiness.

In support of his argument that Bell's out-of-court statements to Hoogstra are not supported by particularized guarantees of trustworthiness, Ramirez relies on the Supreme Court's decision in *Lilly v. Virginia*, 527 U.S. 116 (1999). In *Lilly*, the Supreme Court considered the admissibility of a co-defendant's custodial confession made in response to police questioning. A plurality of the Supreme Court held that accomplice confessions inculpating a criminal defendant are not within a firmly rooted exception to the hearsay rule. *Id*. at 134. The Court further held that an accomplice's statement implicating another person, made in police custody, in response to leading questions and while under the influence of alcohol was not supported by particularized guarantees of trustworthiness and was, therefore, not admissible. *Id*. at 138-39.

Comparison of the circumstances surrounding Bell's out-of-court statements to the circumstances surrounding the statements at issue in *Lilly* shows that Bell's statements are supported by particularized guarantees of trustworthiness.[4] Bell had not been arrested and was not in police custody when he implicated Ramirez in Nandin's murder. Indeed, he made at least one statement implicating Ramirez before the murder was even committed. Bell spontaneously initiated the conversations implicating himself and Ramirez in Nandin's murder, and he made those statements to the friend with whom he was staying, Hoogstra, in Hoogstra's home. While Hoogstra and Bell's sharing of a marijuana cigarette is arguably not dissimilar from the declarant's heavy intoxication in *Lilly*, the totality of the surrounding circumstances, discussed *supra*, provide strong guarantees that Bell's statements were trustworthy. Likewise, while Bell's statements had the effect of implicating

---

[4] In determining whether Bell's out-of-court statements are supported by particularized guarantees of trustworthiness, we may not rely on evidence produced at trial that tends to corroborate Bell's statements. *See Lilly*, 527 U.S. at 137-38.

Ramirez as well as himself, Bell had no apparent incentive at the time of these statements to risk implicating himself and no apparent reason to believe that his statements might result in leniency in any subsequent criminal prosecution. Under these circumstances, we do not believe that reasonable jurists would find debatable the district court's ruling that the state court's adjudication did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

V

Ramirez also claims that the jury instructions during the punishment phase of his trial deprived him of due process of law.[5] Errors in jury instructions do not state a claim for relief unless the error resulted in "prejudice of constitutional magnitude." *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986). The habeas petitioner must demonstrate that the error "had a substantial and injurious effect or influence on the determination of the jury's verdict." *Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999). In a habeas proceeding, the burden of demonstrating that an erroneous jury instruction violates the petitioner's Due Process rights is "greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

Ramirez cites *Enmund v. Florida* for the proposition that the Constitution prohibits execution of an aider and abetter who neither kills, attempts to kill, nor intends to kill another. 458 U.S. 782, 790 (1982). The challenged instruction asked the jury whether it found "from the evidence beyond a reasonable doubt that Luis Ramirez actually caused the death of Nemicio Nandin, the deceased, or if he did not actually cause deceased's death that he intended to kill the deceased or another or that he anticipated human life would be taken?" Ramirez notes that in the general instructions to the

---

[5] Ramirez's counsel did not object to the challenged instruction at trial. See part VI, *infra*.

punishment charge, the state court instructed the jury to "consider all evidence submitted . . . in this whole trial." While not clear from his petition, Ramirez apparently contends that the challenged jury question, read in light of the highlighted instruction, violated *Enmund* by permitting the jury to apply evidence of Bell's guilt to Ramirez and thereby permitted the imposition of a death sentence for a person whom the jury did not find killed, attempted to kill, or intended to kill another.

The instruction plainly asks whether "*Luis Ramirez actually caused the death* of Nemecio Nandin, . . . or if he did not actually cause deceased's death, that he intended to kill the deceased or another, or that he anticipated that a human life would be taken." (emphasis added). This Court has recently held that a punishment phase instruction similar to the one given here "include[s] the requirement of a jury finding of individual liability during the punishment phase." *Campbell v. Dretke*, No. 04-70005, 2004 WL 2830837 (5th Cir. Dec. 9, 2004); *see also Westley v. Johnson*, 83 F.3d 714, 723 (5th Cir. 1996) (stating that the structure of the punishment phase reasonably indicates to the jury that the law of parties is not applicable during that phase). Ramirez's claim that the instruction was ambiguous when read in the context of the punishment-phase instructions as a whole is simply unpersuasive in light of the plain language of this instruction.[6] Reasonable jurists could not disagree with the district court's ruling that the state court's decision was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

VI

In his fourth and fifth grounds for COA, Ramirez claims that he received ineffective assistance

---

[6] Nor do we find any support for Ramirez's contention that the district court, in reviewing Ramirez's habeas claim, failed to consider the challenged instruction in light of the punishment-phase instructions as a whole. The district court found, as we do, that Ramirez had not cited any Supreme Court precedent suggesting that additional language might be constitutionally necessary.

of counsel because his trial counsel (1) failed to locate, interview, and subpoena an alibi witness, Pat Raby and (2) failed to object to the district court's punishment charge. To succeed in his ineffective assistance of counsel claims, Ramirez must demonstrate that his counsel's performance was deficient and that the deficiency prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show deficient performance, Ramirez must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. Performance will be found prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998). Failure to prove either prong will defeat an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Ramirez argues that he is entitled to a COA on his ineffective assistance of counsel claim because his counsel failed to locate, interview and subpoena alleged alibi witness, Pat Raby. Raby and her husband had a construction contract with Ramirez's employer, Jim Walter Homes. Ramirez told the Texas Rangers that he had been to Raby's vacant lot on the day of the murder, but there is no indication in the record he told the Rangers he had seen Raby there. At the state habeas proceeding, Raby testified that she saw Ramirez at the lot sometime between 11:30 A.M. and 12:30 P.M. on the day of the murder. Ramirez, in turn, testified that he told his trial counsel and his court-appointed investigator about Raby.

Ramirez's trial counsel denied that Ramirez informed him about Raby, and the state court was permitted under Texas law to disbelieve Ramirez's claim that he told the investigator about Raby even though the investigator did not testify. *See State Farm Fire & Cas. Co. v. Rodriquez*, 88 S.W.3d 313, 321 (2002) (trier of fact may disbelieve a witness even though his testimony is not controverted).

Accordingly, the state habeas court determined that trial counsel was not aware of Raby prior to trial, except insofar as her name was in the prosecution file in connection with the Jim Walters contract, and that counsel's failure to contact Raby was not a deviation from professional standards. The court also found that Ramirez had failed to show prejudice. The district court rejected Ramirez's habeas petition, finding that Ramirez had failed to rebut the presumption of correctness afforded the state court's factual determinations by clear and convincing evidence.

Ramirez has not shown that the district court's application of the AEDPA to this claim would be debatable among reasonable jurists. Ramirez did not show by clear and convincing evidence that the state court's factual determinations were incorrect, and reasonable jurists could not debate the district court's finding that failure to contact Raby, who under the state court's factual determinations had only the most tangential connection to Ramirez and no apparent connection to the murder, was not deficient performance. Because reasonable jurists could not debate the district court's finding with respect to the state court's adjudication of the deficient performance prong of Ramirez's ineffective assistance claim, we need not address whether there was prejudice. *See Green*, 160 F.3d at 1035.

Ramirez also claims that his trial counsel provided deficient performance by failing to object to the trial court's jury instructions based on the defect alleged in Part V, *supra*. The state habeas court found that the trial judge gave the instructions mandated by Texas law and that the jury was adequately instructed, and we have already refused to grant a COA on Ramirez's jury instruction claim. Because Ramirez has shown no error with regard to the jury instructions, reasonable jurists could not disagree with the district court's determination that the state court's adjudication did not

involve an unreasonable application of clearly established federal law.[7]

Ramirez has not shown that reasonable jurists could debate the district court's resolutions of his constitutional claims, and therefore COA is DENIED on all claims.

---

[7] While not identifying it as a separate claim in his COA petition, Ramirez also suggests that he "was denied his Due Process right to have a jury consider an important sentencing issue mandated by [*Apprendi v. New Jersey*, 530 U.S. 466 (2000)]." Ramirez made a similar argument to the district court, which the district court rejected, but made no such argument to the Texas Court of Criminal Appeals. Because Ramirez did not make his *Apprendi* argument before the state habeas court we decline to address it here. 28 U.S.C. §§ 2254(b), (c); *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003)*; Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (declining to address a claim the substance of which was not fairly presented to the state habeas court).