**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 21, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 04-70021

---

RONALD RAY HOWARD

Petitioner - Appellant

v.

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION

Respondent - Appellee

---

Appeal from the United States District Court
for the Southern District of Texas
No. 03-CV-48

---

Before KING, Chief Judge, and JOLLY and PRADO, Circuit Judges.

KING, Chief Judge:[*]

Petitioner-Appellant Ronald Ray Howard seeks a certificate of appealability (COA) to appeal the district court's dismissal of his 28 U.S.C. § 2254 habeas corpus petition. Because Howard cannot make a substantial showing of the denial of a constitutional right, we DENY his application for a COA.

**I.  BACKGROUND**

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

On April 11, 1992, Howard was driving an automobile that he had stolen three days earlier when Department of Public Safety Trooper Bill Davidson noticed that the right headlight of the vehicle was broken. Davidson pulled Howard over to the side of the road, called in the license plate, and got out of his police car. As Davidson approached the driver-side window, Howard shot him in the neck, inflicting a fatal wound. Howard then drove off.

Law enforcement officers arrested Howard on the night of the shooting. Later that month, a grand jury indicted him for capital murder. Given the overwhelming evidence of guilt--e.g., multiple confessions by Howard (to the police, the grand jury, and fellow inmates), numerous eye witnesses, and evidence that at the time of his arrest Howard possessed ammunition matching the firearm used to kill Trooper Davidson--Howard's counsel did not contest the State's evidence at the guilt phase of his trial. The jury convicted Howard of capital murder.

Following a separate punishment phase, the jury answered the special issues in a manner requiring the imposition of the death penalty. Consequently, the trial court sentenced Howard to death. On direct review, however, the Texas Court of Criminal Appeals overturned the sentence, finding that the trial court erroneously dismissed a prospective juror over her ability to answer Texas's special issues. Howard v. State, 941 S.W.2d 102 (Tex. Crim. App. 1996). After a second punishment phase, a new

jury answered Texas's special issues in a manner again requiring the imposition of a death sentence. Again, the trial court sentenced Howard to death. The Court of Criminal Appeals affirmed the judgment on direct appeal, and the United States Supreme Court denied Howard's petition for certiorari. Howard v. Texas, 535 U.S. 1065 (2002).

While his second direct appeal was pending, Howard filed a state application for habeas relief. The state habeas court entered findings of fact and conclusions of law recommending the denial of Howard's state habeas application. The Court of Criminal Appeals subsequently denied Howard's application.

On May 5, 2003, Howard filed a petition for habeas relief in the United States District Court for the Southern District of Texas. In his federal habeas petition, which was prepared with the assistance of newly court-appointed counsel, Howard alleged that his trial counsel provided ineffective assistance of counsel by not contesting the State's evidence at the guilt phase of his original trial. In addition, Howard argued that he was denied effective assistance of counsel during his second punishment phase because his attorney: (1) failed to object during voir dire when the prosecution informed potential jurors of Howard's first death sentence; (2) failed to strike a juror whose husband and brother were law enforcement officers; (3) entered into an agreement with the prosecution that allowed Howard's extraneous offenses into evidence without objection; and (4) failed to

-3-

object to numerous prosecution exhibits. On March 19, 2004, the district court rejected Howard's claims, denied his habeas petition, and denied a COA on all of his claims. Howard now seeks a COA from this court only with respect to his argument that his trial attorney provided ineffective assistance of counsel at the second punishment phase by not objecting when the prosecution repeatedly informed potential jurors that Howard had been sentenced to death at the original punishment phase of his trial.

## II. DISCUSSION

### A. Standard of Review

Howard's claim is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) because he filed his § 2254 petition on May 5, 2003, after AEDPA's April 24, 1996 effective date. See Fisher v. Johnson, 174 F.3d 710, 711 (5th Cir. 1999) (citing Lindh v. Murphy, 521 U.S. 320, 326 (1997)). Under AEDPA, a state habeas petitioner may appeal a district court's dismissal of his petition only if the district court or the court of appeals first issues a COA. 28 U.S.C. § 2253(c)(1) (2004); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (explaining that a COA is a "jurisdictional prerequisite" without which "federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners"). "[W]hen a habeas applicant seeks permission to initiate appellate review of the dismissal of

his petition, the court of appeals should limit its examination to a threshold inquiry into the underlying merit of his claims." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 481 (2000)). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." Id. at 336.

A COA will be granted "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2004). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). In other words, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 338. Hence, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." Id. at 342. "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id. at 338. Finally, any doubt as to whether a COA should issue in a death-penalty case must be resolved in favor of the petitioner. Newton

v. Dretke, 371 F.3d 250, 254 (5th Cir. 2004); Medellin v. Dretke, 371 F.3d 270, 275 (5th Cir. 2004) (per curiam).

In determining whether the district court's denial of Howard's petition was debatable, we must keep in mind the deferential standard of review that AEDPA requires a district court to apply when considering a petition for habeas relief. Miniel v. Cockrell, 339 F.3d 331, 336 (5th Cir. 2003); see also Miller-El, 537 U.S. at 336-37 ("We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason."). Under AEDPA, a federal court is not to grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings" unless it determines that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is contrary to Supreme Court precedent if: (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law"; or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000) (opinion of O'Connor, J.) (interpreting

the statutory language "contrary to, or involved an unreasonable application of"). "A state court's decision is an unreasonable application of clearly established federal law whenever the state court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an objectively unreasonable manner." Young v. Dretke, 356 F.3d 616, 623 (5th Cir. 2004) (internal quotation marks omitted); accord Williams, 529 U.S. at 409. "An unreasonable application may also occur if 'the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Young, 356 F.3d at 623 (alteration in original) (quoting Williams, 529 U.S. at 407).

"[A] determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness attaches not only to explicit findings, but also to "unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." Pondexter v. Dretke, 346 F.3d 142, 148 (5th Cir. 2003) (quotation marks omitted). A writ of habeas corpus may issue if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding."
28 U.S.C. § 2254(d)(2).

We review the district court's findings of fact for clear error and its conclusions of law de novo.  Collier v. Cockrell, 300 F.3d 577, 582 (5th Cir. 2002).

**B.    Analysis**

Under clearly established federal law as determined by the Supreme Court, a federal habeas petitioner who alleges ineffective assistance of counsel must demonstrate that: (1) his counsel's performance was constitutionally deficient; and (2) the deficient performance resulted in actual prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Riley v. Cockrell, 339 F.3d 308, 315 (5th Cir. 2003).  "To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'"  Wiggins v. Smith, 539 U.S. 510, 521 (2003) (quoting Strickland, 466 U.S. at 688).  "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[2]  Id. at 534  (quoting Strickland, 466 U.S. at

---

[2]      "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." Strickland, 466 U.S. at 698.

-8-

694).  "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."  Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997).

Howard requests a COA only on the claim that his attorney provided ineffective assistance of counsel at his second punishment phase because he allowed the prosecution to inform potential jurors during voir dire that a previous jury had sentenced Howard to death for murdering Davidson.  On state habeas review, Howard's trial counsel explained via sworn affidavit why he decided to allow the potential jurors to learn of Howard's first death sentence during voir dire:

> Because of the pre-trial publicity in this cause, I was concerned that some or many of the prospective jurors would be aware that Mr. Howard had been previously sentenced to death.  Since voir dire would be my only opportunity to question jurors about this matter, I made a tactical decision to question prospective jurors about whether or not they could disregard something which a prior jury had done and make an independent determination of the issues involved in the trial of this punishment cause.  I discussed this with Mr. Howard and he agreed with this strategy decision. Also, this decision was motivated in part by our concern that when we put on evidence in the trial that Mr. Howard had a good prison record since the last trial, it would become evident to jurors that he had been confined on death row.  I felt that this decision was sound trial strategy in this cause.

Howard has never disputed the truth of his trial counsel's affidavit, and the state habeas court explicitly acknowledged it as true.  In addition, the state habeas court made the following "findings of fact":

6.   That [Howard's] defense attorney made no objection

-9-

to the veniremen being informed that [his] original sentence [was] death.

7.  That the issue of querying veniremen on the question of the original sentence was discussed prior to voir dire by [Howard's] defense counsel and the prosecuting attorney.

8.  That [Howard's] defense counsel felt that there was a strong likelihood that some prospective jurors might already be aware of [Howard's] original sentence of death, or might become aware of same when evidence was presented as to [Howard's] good conduct while in prison, where he was held on death row.

9.  That [Howard's] defense counsel felt, as a matter of trial strategy, that it was in [Howard's] best interest to exercise this opportunity to question prospective jurors about the effect of this knowledge and their ability to make an independent decision upon the issues which would be submitted to the jury at the conclusion of the punishment phase of the trial without being improperly influenced by the previous verdict.

10. That the decision by [Howard's] defense counsel not to object to the prosecuting attorney informing prospective jurors as to the prior punishment verdict was a conscious decision after considerable deliberation by defense counsel and was a reasonable trial strategy given the circumstances of the case.

11. That [Howard's] defense counsel's decision not to object to the prosecuting attorney's presentation of this information to prospective jurors was sound trial strategy.

12. That [Howard's] defense counsel felt that he would have to delve into the effect on each jury panelist or risk the possibility that they knew or would learn of the previous verdict and if they were impermissibly influenced by the knowledge he would have missed an opportunity to disqualify those panelists.

13. That even if [Howard's] defense counsel's decision not to object to the jurors being informed of the

first jury verdict had been error, this Court finds, beyond a reasonable doubt, that the result of [his] punishment phase of the trial in Nueces County would not have been different.

The state habeas court also made these "conclusions of law":

5.    [Howard's] defense counsel did not provide ineffective assistance of counsel at the punishment phase of the trial in Nueces County in violation of the United States and Texas Constitutions.

6.    [Howard] was not denied ineffective assistance of counsel.

Thus, the state habeas court considered and rejected Howard's ineffective assistance of counsel claim on the merits.

The federal district court denied Howard's petition for habeas relief on this ineffective assistance of counsel claim because Howard failed to show that the state habeas court's decision was based on an unreasonable determination of the facts or that the state decision was contrary to, or an unreasonable application of, clearly established federal law.  The district court's conclusion is not debatable among jurists of reason.  As the state habeas court found, the district court recognized, and Howard does not dispute, Howard's trial counsel made a strategic decision to allow the potential jurors to learn of Howard's previous death sentence because: (1) he believed that some, or many, of the jurors may have already known of the prior sentence given the high level of publicity surrounding the case; and (2) he wanted to show that Howard had been well behaved while in prison, which might have revealed that Howard had been on death

-11-

row.  Furthermore, trial counsel decided to allow the jury to be informed of the prior sentence during voir dire, as opposed to testimony later in the sentencing proceedings, because it offered him the only opportunity to question potential jurors about the issue and to eliminate those jurors who expressed that they might not be able to make an independent determination.  Moreover, trial counsel discussed these tactics with Howard, who agreed to the strategy.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  Medellin, 371 F.3d at 277 (alteration in original) (quoting Strickland, 466 U.S. at 690).  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002) (quoting Garland v. Maggio, 717 F.2d 199, 206 (5th Cir. 1983)).  Given the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," reasonable jurists could not debate the district court's conclusion that the state court did not unreasonably apply clearly established federal law when it found that Howard's trial counsel's performance was not deficient.[3]

---

[3]     Howard cites two cases in his COA application to support his claim that his trial counsel's performance was deficient:  United States v. Williams, 568 F.2d 464 (5th Cir. 1978), and Arthur v. Bordenkircher, 715 F.2d 118 (4th Cir. 1983).

-12-

<u>Strickland</u>, 466 U.S. at 689. Because jurists of reason could not debate the district court's findings with respect to the state court's adjudication of <u>Strickland</u>'s deficiency prong, we need not address the question of prejudice. <u>See, e.g.</u>, <u>Ramirez v. Dretke</u>, 2005 WL 174643, at *6 (5th Cir. Jan. 27, 2005).

## III. CONCLUSION

For the forgoing reasons, we DENY Howard's application for a COA.

---

We question the applicability of these cases to Howard's COA application because they were decided before <u>Strickland</u> and appear to be distinguishable. Regardless, neither case involved AEDPA's standard of review, and even if <u>Williams</u> and <u>Arthur</u> could be read to support Howard's argument that his trial counsel performed deficiently, they do nothing to suggest that the state court's opposite conclusion was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.