**Joe Franco GARZA, Petitioner–Appellant**

v.

**William STEPHENS, Director, Texas Department of Criminal Justice, Correctional Institutions Division, Respondent–Appellee.**

**No. 13–70019.**

United States Court of Appeals, Fifth Circuit.

July 16, 2014.

Alexander Lee Calhoun, Austin, TX, Paul Edward Mansur, Denver City, TX, for Petitioner–Appellant.

Ellen Stewart–Klein, Assistant Attorney General, Office of the Attorney General, Postconviction Litigation Division, Austin, TX, for Respondent–Appellee.

Before JOLLY, DAVIS, and OWEN, Circuit Judges.

PER CURIAM: *

Petitioner Joe Garza ("Garza") was convicted for capital murder and sentenced to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be

death, after a retrial on punishment, in proceedings in Texas state court. Following his unsuccessful challenges to the conviction on direct appeal and through state habeas review, he filed a petition in federal district court under 28 U.S.C. § 2254. The district court denied that petition and Garza's application for a certificate of appealability ("COA"). Garza now seeks a COA from this court, which we DENY for the reasons set out below.

## I.

The facts underlying Garza's 1998 conviction are not in dispute. On direct appeal, the Texas Court of Criminal Appeals ("TCCA") set forth the facts of the murder as follows:

> At the guilt/innocence phase of trial, the jury heard evidence that [Garza] brutally strangled 71–year–old Silbiano Rangel to death with a sock. [Garza] did so after Mr. Rangel—an acquaintance of [Garza's] cousin—had driven [Garza], his cousin, and his cousin's son to "the strip" in Lubbock, Texas, to buy beer. Apparently [Garza] murdered Mr. Rangel because he would not also pay for the beer. [Garza] choked the elderly man for seven to ten minute[s] before Mr. Rangel finally died of oxygen deprivation. Afterwards, [Garza] and his cousin put the deceased's body behind the truck seat. [Garza] then drove his cousin to a friend's house. While she went inside to get [Garza] some beer, [Garza] went through Rangel's wallet. [Garza] then gave his cousin four dollars from the wallet and drove away.
>
> The medical examiner called Mr. Rangel's death a "classic case" of strangulation by ligature. The victim also suffered a blunt force injury which ripped

the skin from part of his ear as well as other injuries which suggested struggle.[1]

He was sentenced to death after his initial trial, but he prevailed in a federal habeas proceeding and obtained a retrial on punishment. At the punishment retrial, the jury again sentenced Garza to death based on the future dangerousness special issue. In its opinion on Garza's second direct appeal from the limited retrial, the TCCA elaborated on the facts of the murder and summarized the jury's finding on the future dangerousness issue:

> [T]he jury heard that [Garza] had been drinking at his cousin's house when someone there called the 71–year–old victim, Silbiano Rangel, and asked him to come over. Rangel gave [Garza] and his cousin a ride to a liquor store to buy beer. After they got to the store, [Garza] and his cousin realized that they had no money. Rangel then drove them to the house of a friend, where [Garza]'s cousin went inside to try to borrow money. While she was in the house, [Garza], who was sitting behind Rangel, strangled him with a sock. When his cousin returned to the truck, [Garza] ordered her to help him move Rangel's body into the back of the truck. He took Rangel's wallet, jewelry, and truck, and he dropped his cousin off at her friend's house. He drove the stolen truck to the house of his 13–year–old pregnant girlfriend, where he lied to Rangel's friend who noticed the truck and asked about Rangel. He then woke his girlfriend and took her with him to Dallas in Rangel's truck, stopping along the way to pawn Rangel's ring and make purchases with Rangel's checks. While in Dallas he gave or sold the truck to a stranger

---

published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1. *Garza v. State*, No. AP–73,850 (Tex.Crim. App. Sept. 18, 2002).

and borrowed money from a friend. He and his girlfriend returned by bus to Lubbock. Later, he bought a newspaper and read it to see if there had been a report of Rangel's death.

The morning after the murder, Rangel's body was found on the side of the road with the sock still tied around his neck. There was testimony that Rangel's injuries were consistent with him having struggled before he died. The medical examiner testified that injuries on Rangel's face were consistent with blunt force trauma.

[Garza]'s prior juvenile adjudications included burglary and arson. He had been belligerent to a police officer who had stopped a stolen car in which [Garza] was a passenger. He had attempted to escape from the juvenile justice center by kicking out the windows, and he had fought with the responding officers. He was arrested for carrying a homemade dagger when he was seventeen years old. As an adult, [Garza] had been arrested for public intoxication more than once. There was evidence that he had assaulted his girlfriend's sister by punching her in the face and then chasing her to a closet. He broke down the closet door and then kicked her repeatedly as she lay on the closet floor. He did not stop until the police arrived, and then he fled the house. He had stolen a car, guitar, and leather jacket from a man who had given him a ride in the rain. The records introduced by the State revealed that by the time of the instant offense, [Garza] had been adjudicated delinquent as a juvenile or convicted as an adult of several offenses including burglary, criminal mischief,

theft, arson, evading arrest, resisting arrest, attempted escape, and aggravated robbery. [Garza] was on parole from a burglary conviction when he committed the instant offense.

[Garza]'s prison disciplinary record included numerous disciplinary violations, such as possessing homemade weapons, assaulting inmates, and verbally threatening and verbally abusing corrections officers. One inmate that he assaulted required seventeen stitches after the attack. Another disciplinary violation involved throwing hot water at a corrections officer. In addition, [Garza] had been investigated as a possible prison-gang member in 1994 and 1995. During an interview that was conducted as part of that investigation, [Garza] did not admit to being a gang member, but he told gang-intelligence officers that if the San Antonio inmates were not shipped off the unit, they would be "shipped off in coffins." Although [Garza]'s gang membership was not confirmed at that time, the Security Threat Group ("STG") management office of the Texas Department of Criminal Justice ("TDCJ") later confirmed [Garza] as a Texas Syndicate ("TS") gang member.[2]

Garza filed a state habeas application, which the TCCA denied in 2009.[3] Through counsel, Garza filed a federal habeas petition in 2010, asserting 17 grounds for relief. The district court issued an order denying Garza's habeas petition on March 6, 2013, supported by findings of fact and conclusions of law as to each of the 17 grounds.[4] In his application for COA to the Fifth Circuit, Garza identified six specific grounds for relief and also

---

**2.** *Garza v. State*, 2008 WL 5049910, *1–2 (Tex. Crim.App. Nov. 26, 2008).

**3.** *Ex parte Garza*, WR–56,961–02, 2009 WL 174954 (Tex.Crim.App. Jan. 14, 2009).

**4.** *Garza v. Thaler*, No. 5:10–cv–00013–C (N.D.Tex. Mar. 6, 2013).

argued that he was entitled to develop the facts further and have an evidentiary hearing before the federal habeas court.

## II.

This habeas proceeding is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[5] Before a federal habeas petitioner can appeal the district court's denial of his petition, he must first obtain a COA, which requires the petitioner to make "a substantial showing of the denial of a constitutional right."[6] In seeking a COA on claims the district court has rejected on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[7] In seeking a COA on claims the district court has rejected on procedural grounds, the petitioner must "show[ ], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[8]

At the COA stage, we make only a threshold inquiry into the merits of Garza's claims, "which does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it."[9]

We evaluate the debatability of [the petitioner's] constitutional claims against the backdrop of the AEDPA's highly deferential standard. Under the AEDPA, a federal court may not grant habeas relief unless the petitioner has first exhausted state remedies with respect to the claim at issue. 28 U.S.C. § 2254(b). To prevail, the habeas petitioner must prove that the state court's constitutional adjudication resulted in either a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. § 2254(d)(1)–(2).... When ruling on a petition for a writ of habeas corpus, the federal district court must defer to the state court's factual findings, *Moody v. Quarterman*, 476 F.3d 260, 267–68 (5th Cir. 2007), and consider only the record that was before the state court, *Cullen v. Pinholster*, —— U.S. ——, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).[10]

In death penalty cases, "any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor."[11]

## III.

One of Garza's overarching claims is that the state court both failed to consider all of the evidence presented and wrongfully refused to allow him to develop more facts. Before moving to the merits of his

---

**5.** *Trottie v. Stephens*, 720 F.3d 231, 239 (5th Cir.2013), *cert. denied*, —— U.S. ——, 134 S.Ct. 1540, 188 L.Ed.2d 562 (2014).

**6.** *See* 28 U.S.C. § 2253(c).

**7.** *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

**8.** *Id.* (emphasis added).

**9.** *Miller–El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

**10.** *Garza v. Stephens*, 738 F.3d 669, 673–74 (5th Cir.2013).

**11.** *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir.2005) (alteration in original) (citation and internal quotation marks omitted).

other claims, we first determine whether Garza is entitled to additional fact development.

Under § 2254(d), "An application for a writ of habeas corpus ... shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ... (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Only if a petitioner can overcome this hurdle may he move on to § 2254(e), which provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
>> (A) the claim relies on—
>>
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>>
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable

factfinder would have found the applicant guilty of the underlying offense.[12]

Garza claims that the state habeas court's rejection of the claims presented in this COA application was based on unreasonable determinations of the underlying facts, any one of which would have been sufficient to satisfy § 2254(d)(2). Specifically, he argues that the state court unreasonably ignored most of the evidence he presented in his state habeas proceeding regarding his attorney's alleged ineffective assistance and unreasonably denied him access to additional evidence regarding his alleged gang affiliation. Garza therefore argues that he is not barred from obtaining habeas relief under § 2254(d), should have been allowed to further develop the facts in support of his claims, and should have been given an evidentiary hearing under § 2254(e)(2).

Garza must overcome several substantial legal obstacles before he is entitled to relief. First, he is not entitled to any habeas relief unless the state habeas court reached an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[13] A state habeas court's procedures which simply reject a petitioner's facts may constitute an "unreasonable determination" sufficient to satisfy § 2254(d)(2),[14] and that is what Garza claims here. He asserts that in the state habeas proceeding he set out facts which, if proven, might entitle him to relief. He claims the state habeas court unreasonably rejected his assertions even though the State put forward no evidence in response. Thus, Garza claims, the district court should have granted him further fact development and held an evidentiary hearing.

---

**12.** 28 U.S.C. § 2254(e).

**13.** 28 U.S.C. § 2254(d)(2).

**14.** *Cf. Richards v. Quarterman*, 578 F.Supp.2d 849 (N.D.Tex.2008), *aff'd*, 566 F.3d 553 (5th Cir.2009).

Garza did not actually possess facts which would change the outcome; he only hoped to locate them with additional time. He claimed he might have located evidence that his attorneys improperly obstructed his exercise of his right to testify and otherwise provided ineffective assistance. He also claimed that the Texas Department of Criminal Justice ("TDCJ") wrongfully withheld (on the advice of the Texas Attorney General) all non-public documentation regarding the TDCJ's classification of Garza as a gang member, as well as any "training manuals, guidelines, written procedures, written policy statements, and like documents" prepared by TDCJ or its employees for the identification and classification of inmates as gang members.

■ The state habeas court found that Garza had failed to raise any material controverted, previously unresolved factual issue, and it refused to grant Garza additional fact discovery or an evidentiary hearing. We cannot say the state habeas court's decision was unreasonable. Under AEDPA's deferential standard, the state habeas court is not required to hold a live evidentiary hearing or carry out any particular set of procedures; it must only act reasonably.[15] Here, the state habeas court elected to rely on the trial record and did not give credence to Garza's proffered evidence, which was incomplete.

Second, the proposed new evidence concerned issues which would not clearly have altered the outcome. For example, with respect to his argument that he would have exercised his right to testify but was thwarted by his attorneys, discussed below, the record before the state habeas court showed that the trial judge had warned Garza of the consequences of testifying, and Garza changed his mind after consulting with trial counsel further. It is hard to say the state habeas court was unreasonable in rejecting Garza's new assertions that he would have testified and that it would have changed the outcome, particularly given the mountain of evidence concerning his criminal history and prison disciplinary problems. Likewise, Garza's arguments regarding the TDCJ's gang affiliation classification would not clearly change the ultimate outcome. In short, the evidence that Garza proposed to submit to or gather for the state habeas court was not necessarily outcome-determinative, and the court did not reject it unreasonably.

Third, even if Garza could show that the state court unreasonably rejected the proffered evidence and therefore could satisfy § 2254(d)(2), he would not necessarily be entitled to supplement the evidence in this federal habeas proceeding. Under § 2254(e)(1), the state court's factual determinations are presumed to be correct and must be rebutted by clear and convincing evidence. To supplement the record in this court under § 2254(e)(2), Garza must show both that "the claim relies on ... a factual predicate that could not have been previously discovered through the exercise of due diligence" *and* that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, *no reasonable factfinder* would have found the applicant guilty of the underlying offense" (emphasis added). Even if every proffered new piece of evidence were true, a reasonable factfinder could still reach the same conclusions the jury reached in this case, namely that Garza was guilty of the underlying crime and that he posed a risk of future harm. Thus, under the plain language of § 2254(e)(2), Garza has failed to show that he is entitled to further fact development and/or an evidentiary hearing

---

15. *See, e.g., Valdez v. Cockrell,* 274 F.3d 941, 948–51 (5th Cir.2001).

in this federal habeas proceeding. He is not entitled to a COA on that issue.

## IV.

Garza claims both that he was denied the right to testify and that his trial counsel was ineffective in advising him not to testify. We address these issues separately. As explained above, Garza has not shown that he is entitled to additional evidence in this federal habeas proceeding because the proffered hypothetical evidence would not necessarily change the outcome. The district court's findings of fact and conclusions of law are reasonable and appear to be correct. The district court found that Garza waived his claim that he was denied the right to testify by failing to raise it on direct appeal, but even if he had not waived it, he has not asserted a viable claim here.

The district court found that when Garza raised this claim in his state habeas application, the TCCA dismissed the claim after it determined that Garza could have raised the claim on direct appeal but failed to do so. Garza's trial counsel told the trial court that Garza wanted to testify in his own defense but had been advised that his counsel believed it was a mistake to do so. Nevertheless, trial counsel told Garza that he had an absolute right to testify. The trial court asked Garza whether he understood that if he chose to testify, he would be subject to cross-examination and would be required to answer any questions. Garza reiterated that he wanted to testify over the advice of counsel, including his trial counsel's concern that Garza would waive two valid points of error by

doing so. (Garza does not specify what these points of error might be.)

The district court further found that Garza requested a short recess to consult his attorneys outside the courtroom. When they returned, Garza's trial counsel informed the court that Garza would not be testifying after all and instead would be asserting his Fifth Amendment right to remain silent. Strictly speaking, Garza does not argue that the trial court interfered with his right to testify, only that his trial counsel did.

Based on these findings of fact, the district court concluded that Garza is not entitled to relief on this claim. First, it reasoned that Garza could have raised the claim on direct appeal but failed to do so, which constitutes an independent and adequate state procedural bar sufficient to default the claim on federal habeas review.[16] Next, the court concluded that Garza failed to establish cause and prejudice to excuse the procedural default or demonstrate that the imposition of the procedural bar will result in a fundamental miscarriage of justice.

In the alternative, the district court determined that even if Garza claimed that the trial court itself interfered with his right to testify, he has failed to support that claim with sufficiently detailed facts, only conclusory and vague allegations.[17] The district court also noted that the state habeas court had already examined the merits of Garza's claim regarding his deciding not to testify:

4. Relying upon the facts in the record, the state court reasonably determined:

16. See Brewer v. Quarterman, 466 F.3d 344, 347 (5th Cir.2006); Aguilar v. Dretke, 428 F.3d 526, 535 (5th Cir.2005).

17. See Barnard v. Collins, 958 F.2d 634, 643 n. 11 (5th Cir.1992); and Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (noting that claims that are "unsupported by specifics are subject to summary dismissal").

a. [B]ased on the [trial] [c]ourt's colloquy with [Garza], and based on the trial counsel's uncontested, uncontroverted, and unopposed announcement that [Garza] no longer wished to exercise his right to testify—made in [Garza's] presence—the [c]ourt was under no obligation or duty to inquire further into the bases, reasons, or strategic or tactical considerations that led to [Garza's] choice.

(R. for State Habeas WR–56,961–02 at 527–28.)

b. [F]or the [trial] [c]ourt to have engaged in an examination of the particular and specific bases, reasons, and consideration [Garza] discussed with his trial counsel at his request outside the [c]ourt's presence before he made the decision not to testify would have violated [Garza's] Sixth Amendment right in order to inquire into matters that he clearly understood—that his right to testify or not as he chose, which had already been fully explored with him. Furthermore, it might have indicated a directive from the Court, or at least advice from the [c]ourt, that [Garza] should testify.

(R. for State Habeas WR–56,961–02 at 528.)

c. [T]he [trial] [c]ourt did not err or abuse its discretion by failing to pursue the underlying reasons for, or considerations involved in, [Garza's] decision not to testify.[18]

■ Based on all of the above, Garza is not entitled to a COA on his claim that he was denied the right to testify. After Garza made known his intention to testify, Garza's trial counsel and the trial court informed him of the serious problems with testifying, and Garza made a conscious, informed decision not to do so after an additional private consultation with his trial counsel. The trial court made sure that Garza knew that the decision was his alone to make. Thus, even if Garza had preserved this claim, we do not believe there is any merit to it. Thus, we deny a COA on this claim.

## V.

As noted above, Garza also argues that his trial counsel was ineffective in advising him not to testify. Garza claims he was never prepared to testify even though he made it clear he desired to testify, but he does not claim that his counsel forbade him from testifying. He states that his trial counsel implored him not to testify because it would waive two viable errors for appeal. Garza does not specify what these errors were, only that trial counsel based their advice in part on preserving them for appeal.

The district court reviewed the circumstances of Garza's waiver:

7. Petitioner has failed to rebut by clear and convincing evidence the state court's finding regarding Petitioner's demeanor at trial when waiving his right to [testify]:

[Garza] did not say anything, and did not display any surprise, confusion, concern, contradictory feelings, or any other expression, and exhibited nothing in his actions or demeanor that conveyed even the mildest indication that he had been pressured, intimidated, coerced, unduly influenced, or otherwise improperly compelled by his trial counsel to surrender his right to testify against his will, or that the decision [not] to testify had not really been his own free, voluntary choice-nor did he ever do so throughout the remainder of the proceedings.

18. *Garza v. Thaler*, No. 5:10–cv–00013–C, *14–15 (N.D.Tex. Mar. 6, 2013).

(R. for State Habeas WR–56,961–02 at 532.)

8. Petitioner fails to allege in his federal habeas petition the substance of the testimony he would have offered had he taken the stand on his own behalf at the punishment phase of trial.[19]

The district court concluded that Garza could have raised this claim but failed to do so, which constitutes an independent and adequate procedural bar sufficient to default the claim at this stage.[20] Furthermore, the district court concluded that he failed to establish cause and prejudice for the default or demonstrate that it would lead to a fundamental miscarriage of justice. Even if Garza's claim were not procedurally defaulted, however, the district court found that it lacked merit.

Under *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir.2007), we assess claims that counsel unconstitutionally interfered with the right to testify under the two-prong standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

A defendant's Sixth Amendment rights are violated if counsel's assistance was deficient and the defendant was therefore prejudiced. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. There are two prongs to the test: (1) whether counsel's representation fell below the objective standard of reasonableness; and (2) whether there is a reasonable probability that, if counsel had not acted unprofessionally, the outcome of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. The petitioner must show irresponsibility on the attorney's part that is sufficient to undermine confidence in the outcome of the trial.

*Soffar v. Dretke*, 368 F.3d 441, 478 (5th Cir.2004).[21]

█ In this case, it is unnecessary to reach the latter question because there is no evidence that Garza's trial counsel's representation fell below the objective standard of reasonableness. Quite the contrary: given the fact that Garza would be exposed to cross-examination and a far wider inquiry into his past behavior, coupled with the fact that trial counsel believed Garza's testifying would waive two viable errors on appeal, his trial counsel appears to have acted reasonably in advising him not to testify. Indeed, given the severe potential problems that Garza's choosing to testify would have raised, we cannot say that his trial counsel was unreasonable even in failing to prepare him for that ill-advised testimony.

Building on the above, the district court's conclusions touched on both *Strickland* prongs:

4. The state court reasonably and properly determined that counsel was not deficient in the substance of the advice or the manner in which it was given to Petitioner concerning his right to testify.

a. Counsel's advice regarding their concerns and possible consequences of a decision to take the stand was in accordance with counsel's duty and obligation to provide effective representation under the Sixth Amendment.

b. No evidence exists showing that counsel was coercive or pressured Petitioner into waiving his right to testify.

5. In the alternative, Petitioner has failed to allege the substance of the tes-

---

**19.** *Id.* at *20.

**20.** *See Brewer, supra; Aguilar, supra.*

**21.** *Bower v. Quarterman*, 497 F.3d 459, 466.

timony he would have offered during the punishment phase of trial had he taken the stand on his own behalf. Thus, he cannot prove that he was prejudiced by the allegedly improper conduct by his attorneys.[22]

We agree. We cannot find, on these facts, that his counsel's assistance was ineffective either in strongly advising him not to testify or in failing to prepare him for ill-advised testimony. Accordingly, we deny COA on this issue.

## VI.

Garza asserts both a substantive claim and a related claim of ineffective assistance of counsel regarding trial counsel's alleged failure to investigate and present evidence that would have undermined the State's evidence tying him to the Texas Syndicate, a violent prison gang. He cannot prevail on these claims. First, Garza never objected to the State's evidence. Second, the State presented a substantial amount of evidence regarding Garza's gang membership, some of which was favorable to Garza, and the jury apparently chose to give greater weight to the State's assertion that he was in fact a gang member. Third, because the gang membership issue was just a small part of Garza's overall history, he cannot show prejudice on this issue.

The district court summarized the relevant evidence as follows:

At Petitioner's retrial on punishment, evidence relating to his gang involvement was presented. An investigation was conducted into whether Petitioner was possibly a member of the Texas Syndicate, a prison gang. Inspections of his cell revealed items that suggested to the gang intelligence officer for the Roach Unit in Childress, Texas, that Petitioner was a member of the Texas Syndicate. Petitioner was requested to attend an office interview with the gang intelligence officer to confirm or deny gang affiliation. Petitioner denied being involved in any gang but informed the officer that if the officer did not get members of the Mexican Mafia—enemies of the Texas Syndicate—out of prison, their members were going to leave in body bags. The gang intelligence officer's supervisors did not agree with the gang intelligence officer's determination that Petitioner was a gang member. Yet, while incarcerated, Petitioner wrote to suspected and confirmed members of the Texas Syndicate and discussed ($l$) the individuals that were being recruited; (2) what Petitioner's position was at the Roach Unit; and (3) what Petitioner was supposed to be doing there at the unit, such as making calls for the Texas Syndicate. The persons at the Roach Unit who monitored Petitioner's mail believed that the tone of the letters and references made therein implied that Petitioner was in a leadership role and capable of making others comply with his wishes. It was also discovered that Petitioner had tattoos consistent with Texas Syndicate membership. A TDCJ Security Threat Group Coordinator also testified regarding general knowledge of the gang's organization and his "very strong opinion" that Petitioner was a member of the Texas Syndicate. This opinion was based upon a review of Petitioner's tattoos and the letters he had written.[23]

The district court reasonably concluded that Garza's failure to object to the admissibility of the evidence of his gang

**22.** *Garza v. Thaler*, No. 5:10–cv–00013–C, *21–22 (N.D.Tex. Mar. 6, 2013).

**23.** *Id.* at *7.

membership at the punishment retrial constitutes an independent and adequate state procedural bar to federal habeas review.[24] Moreover, the district court found that even if Garza had preserved the claim, the issue of the weight of that evidence was one for state courts. Garza's alleged gang membership was just one part of a larger body of evidence regarding Garza's future dangerousness, most of which concerned his lengthy criminal history and prison disciplinary issues, so Garza cannot show prejudice. In short, based on the evidence before it, the district court properly concluded that Garza is not entitled to a COA on these issues.

## VII.

Finally, Garza argues that the State presented false or misleading evidence regarding Gus Vaquera, its expert witness on prison gangs, and that it suppressed material and favorable evidence concerning the truthful character of two State witnesses, Roy Rodriguez and Gus Aleman. These claims must fail for similar reasons to his other claims regarding evidence of Garza's gang membership: as both the state court and federal district court found, evidence of Garza's gang membership was far less important than the large amount of evidence regarding his criminal history and prison disciplinary problems. Thus, even if Garza's assertions were correct, they would not concern material evidence. Moreover, as the federal district court noted, Garza failed to show that the State presented false or misleading evidence with respect to Vaquera's testimony, and it found, among other things, that Garza's counsel effectively impeached Rodriguez's and Aleman's testimony even without the evidence Garza now calls into question. The district court's findings of fact and conclusions of law appear to be

correct. Garza is not entitled to a COA on these issues.

## VIII.

For the reasons stated above, we find that Garza has failed to demonstrate that reasonable jurists would find the district court's assessment of his claims debatable or wrong. Garza's motion for a COA is DENIED.